**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:25-CV-00527-RSE**

**CHASIDY G.**                                                                                    **PLAINTIFF**

**VS.**

**FRANK BISIGNANO,**
*Commissioner of Social Security*                                                      **DEFENDANT**

## MEMORANDUM OPINION
## AND ORDER

The Commissioner of Social Security denied Claimant Chasidy G.'s application for disability insurance benefits. Claimant seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), filing a fact and law summary and brief. (DN 15; DN 16). The Commissioner responded in a fact and law summary, (DN 17), and Claimant did not reply.

The parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 10).

### I. Findings of Fact

Claimant Chasidy G. ("Claimant") first applied for disability insurance benefits under Title II of the Social Security Act in October 2019, alleging disability beginning on June 1, 2018. (Transcript, hereinafter, "Tr." 287-93). Her application was denied by the State agency Disability Determination Service at both the initial and reconsideration levels. (Tr. 100; Tr. 115).

At Claimant's request, Administrative Law Judge D. Lyndell Pickett ("ALJ Pickett") conducted an in-person hearing on March 11, 2021, at which Claimant and a vocational expert

("VE") testified. (Tr. 42- 62). on August 10, 2023 (Tr. 41-61). On July 28, 2021, ALJ Pickett issued a decision finding that Claimant was not disabled. (Tr. 120-28). On July 7, 2022 the Appeals Council remanded the case back to ALJ Pickett with the instruction that, "[u]pon remand," ALJ Pickett complete the following: (1) "[r]econsider whether obesity, singly or in combination, medically equals the severity of one of listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[;]" (2) "[c]onsider the third-party function report, dated November 8, 2019," from Claimant's spouse; and (3) "[g]ive further consideration as to the [C]laimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations[.]" (Tr. 134-41).

ALJ Pickett held a new hearing by telephone on December 29, 2022, at which Claimant and a VE testified. (Tr. 63-88). ALJ Pickett issued a second decision finding that Claimant was not disabled. (Tr. 10-21). The Appeals Council denied Claimant's request for review, and Claimant then appealed to this Court. (Tr. 1-3; *see Smith-Garrett v. Comm'r of Soc. Sec.*, No. 3:24-cv-00030-GNS-CHL (W.D. Ky. 2024)). On May 2, 2024, District Judge Greg N. Stivers issued an order vacating ALJ Pickett's decision based on a joint motion for remand. (Tr. 924-25). In August 2024, the Appeals Council issued an order remanding the case to a new ALJ. (Tr. 929-935).

Administrative Law Judge Candace McDaniel ("ALJ McDaniel") held a new hearing on May 13, 2025. (Tr. 862-96). During the hearing, Claimant testified as follows. During 2018 and 2021, her gastroenterologists put her on over-the-counter pre- and pro-biotics for irritable bowel syndrome. (Tr. 873). She reported that the medications helped some but did not resolve her issues. (*Id.*). She explained that she has Sjogren's syndrome and that it aggravated her bowel issues so she experienced significant cramping and had to go to the bathroom multiple times a day, where it

would sometimes take twenty to thirty minutes before she could function normally. (Tr. 873-76). She never had to wear diapers but would wear a menstrual pad and carry a change of underwear with her in case of accidents. (Tr. 878). She tried numerous diets to help her with her issues, including a FODMAP diet, lactose-free diet, and gluten-free diet. (Tr. 877). She worked throughout her bowel issues as a dental hygienist, eventually leaving that position in December 2018, but would at times have to excuse herself to use the bathroom. (*Id.*; Tr. 889). She never technically got in trouble with her supervisor but stated that he mentioned the amount of time she was absent to use the bathroom on a couple occasions. (Tr. 878).

Her hands would swell from her Sjogren's syndrome. (Tr. 879). It made it difficult to hold the tools she needed as a dental hygienist, and she used a larger tooler set so she could grip the tools easier. (Tr. 880). The swelling and pain worsened throughout the day. (*Id.*). Her impairments also caused some difficulty sitting for long periods of time during the workday (Tr. 880-82). She explained that she could typically sit for twenty minutes at a time before she started feeling painful muscle cramps. (*Id.*). Sometimes, she explained, she would work through it and stay seated, sometimes she would work through it by alternating between standing and sitting, and sometimes she would pause to stretch. (*Id.*).

Sometime after or near the end of her position as a dental hygienist she started taking Lyrica for her muscle spasms, which helped but did not entirely resolve her problems. (Tr. 881-83). From 2018 to 2021 she tried different medications to help with her Sjogren's symptoms, but she had reactions to them such as gut issues, rashes, or headaches. (*Id.*). Now, she takes CellCept and steroid inhalers because the Sjogren's "started attacking" her lungs, leading to problems moving long distances and going up the stairs. (Tr. 883-84).

When asked how fatigue affected her while she was working, she explained that the fatigue came in different phases. (Tr. 884-86). She said that some days she would experience body aches, some days her body would feel extremely heavy, and some days when she would just be very tired. (*Id.*). She took breaks while she was working for the fatigue, but she reported that they did not seem to affect her job. (*Id.*). She also experienced migraines while she was working and on a couple occasions had to leave work because the migraines affected her vision. (*Id.*). Extra strength Tylenol helped with the migraines. (*Id.*).

She explained that her vision was also affected by her Sjogren's because it gave her dry eyes and rashes around her eyes. (Tr. 886-87). She tried Plaquenil, Restasis, and over-the-counter eye drops to help her symptoms. (*Id.*). She had to stop taking the Plaquenil, however, because it caused problems with her retinas and swelling in her lower extremities. (*Id.*).

On June 20, 2025, ALJ McDaniel issued a decision finding that Claimant was not disabled. (Tr. 837-61). In applying the five-step sequential analysis from 20 C.F.R. § 404.1520(a), ALJ McDaniel found as follows. First, Claimant did not engage in substantial gainful activity from her alleged onset date of June 1, 2018, through December 31, 2020, her date last insured. (Tr. 843). Second, Claimant had the following severe impairments: Sjogren's syndrome, Hashimoto syndrome, positive antinuclear antibody (ANA), elevated rheumatoid factor, Hashimoto's/Sicca/Polyarthralgia, and obesity. (*Id.*). Third, through the date last insured, Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of none a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*). Fourth, ALJ McDaniel found that, through the date last insured, Claimant had the residual functional capacity ("RFC") to perform light work with the following limitations:

> [Claimant] could frequently, but not constantly or repetitively, handle and finger, bilaterally; she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs, as well as occasionally stoop, kneel, crouch, and crawl; and she can have occasional exposure to extreme cold and heat.

(Tr. 845). Finally, through the date last insured, ALJ McDaniel found that Claimant was unable to perform past relevant work but that there were jobs that existed in significant numbers in the national economy that Claimant could have performed, such cleaner, mail room worker, and checker. (Tr. 849-50).

Because Claimant did not appeal and the Appeals Council did not review ALJ McDaniel's decision on its own, the decision became final. (Tr. 837-38). Since then, Claimant appealed to this Court pursuant to 42 U.S.C. § 405(g). (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-4 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id*. at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an

inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 495(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could support a decision as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

When the Court reviews the Administrative Law Judge's application of legal standards, the decision is reviewed for harmless error. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). Accordingly, when an Administrative Law Judge fails to adhere to the appropriate rules and regulations, remand is warranted if "the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Id.* (quoting *Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983)).

### III. Conclusions of Law

Claimant presents two claims of error. First, she submits that ALJ McDaniel's evaluation of her subjective testimony is unsupported by substantial evidence because she failed to evaluate Claimant's testimony with the relevant factors set forth in Social Security Ruling 16-3p. (DN 16, at PageID # 1872-75). Next, Claimant submits that the RFC is internally inconsistent because, despite finding that Claimant's fatigue and malaise warranted greater limitations than opined by the state agency physicians, ALJ McDaniel failed to include limitations rationally related to

6

Claimant's fatigue and malaise in the RFC or explain why no such limitations were warranted. (*Id.* at PageID # 1876-79). These deficiencies, Claimant submits, render ALJ McDaniel's decision unsupported by substantial evidence and warrants remand. (*Id.* at PageID # 1879).

A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). Put otherwise, the RFC is the most a claimant can do despite her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing a claimant's RFC, the ALJ must consider a claimant's subjective allegations alongside medical records and physician opinions. *Id.* (a)(3); 20 C.F.R. §§ 404.1520c, 404.1529(a). In doing so, the ALJ evaluates the claimant's statements against factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), including:

(1) A claimant's daily activities;

(2) The location, duration, frequency, and intensity of pain and other symptoms;

(3) Factors that precipitate and aggravate the symptoms;

(4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

(5) Treatment, other than medication, an individual receives or has received for relief from pain or other symptoms;

(6) Any measures other than treatment an individual uses or used to relieve pain or other symptoms; and

(7) Any other factor concerning an individual's functional limitations and restrictions due to pain and other symptoms.

The ALJ is not required to analyze all seven factors and may discuss only those relevant to the alleged symptoms. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

An ALJ's decision must include "specific reasons for the weight given to the individual's symptoms" in a "consistent" and "clearly articulated" way, so "any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10. But the ALJ need not use "magic words" so long as it is clear from the decision as a whole why the ALJ reached a specific conclusion. *Lloyd v. Comm'r of Soc. Sec.*, No. 5:23-CV-01166-SL, 2024 WL 2278251, at *14 (N.D. Ohio Apr. 30, 2024). Nor is the ALJ required to analyze the relevance of each piece of evidence to the claimant's subjective statements individually. *Springer v. Comm'r of Soc. Sec.*, 451 F. Supp. 3d 744, 762 (E.D. Mich. 2020) (citing *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011)). An ALJ's conclusions regarding subjective symptom evidence receive great deference on review. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

In Claimant's first claim of error, she submits that ALJ McDaniel improperly omitted a summary or discussion of Claimant's hearing testimony in assessing Claimant's subjective statements about the intensity, persistence, and limiting effects of her impairments. (DN 16, at PageID # 1873). ALJ McDaniel's generic references to Claimant's testimony, Claimant explains, result in harmful error because she is unable to challenge ALJ McDaniel's reasons for rejecting her testimony since ALJ McDaniel did not state them. (*Id.* at PageID # 1873-74).

In response, the Commissioner points out that Claimant fails to identify any specific limitations alleged in her hearing testimony that ALJ McDaniel failed to discuss. (DN 17, at

PageID # 1883-86). Even so, the Commissioner submits, ALJ McDaniel provided a detailed summary of Claimant's subjective statements and then broadly, and properly, found those statements inconsistent with the medical evidence and other evidence of record including Claimant's course of treatment, imaging, medication usage, opinion evidence, and daily activities. (*Id.*). The Commissioner explains that this evaluation demonstrates ALJ McDaniel's compliance with Social Security Ruling 16-3p and provides substantial evidence to discount Claimant's subjective complaints. (*Id.*).

Claimant is correct that ALJ McDaniel's discussion of Claimant's subjective statements omits a detailed discussion of Claimant's hearing testimony. (*See* Tr. 845-48). But it is well established that an "ALJ can consider all of the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (quoting *Loral Defense-Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999) (citations and internal quotation marks omitted)). Put otherwise, "[t]here is a difference between what the ALJ must consider versus what he must discuss." *Escobar v. Kijakazi*, No. 3:21-cv-372, 2023 WL 2769090, at *3 (E.D. Tenn. Mar. 31, 2023). An ALJ's failure to discuss a claimant's hearing testimony, accordingly, is not *per se* error. *See Henman v. Comm'r of Soc. Sec.*, No. 18-cv-10940, 2019 WL 4866146, at *6 (E.D. Mich. July 8, 2019); *Escobar*, 2023 WL 2769090, at *3. As one court has noted, "[t]o the contrary, it is axiomatic that the ALJ considered all of the [p]laintiff's hearing testimony, as he is the ALJ that presided over the administrative hearing." *Henman*, 2019 WL 4866146, at *6.

Moreover, a review of ALJ McDaniel's decision demonstrates that she adequately considered Claimant's subjective statements in the RFC assessment. ALJ McDaniel recounted the

evidence Claimant provided in a pain questionnaire, fatigue questionnaire, and two function reports. (Tr. 845-46). Much of the evidence cited is like Claimant's testimony during the hearing. For example, Claimant's reports about her increased pain and swelling throughout the day caused by sitting or standing for too long and repetitive movements mirror her hearing testimony. (*Compare* Tr. 334-37, *and* Tr. 382-86, *and* Tr. 388, *with* Tr. 880-82). Her reports about migraines, shortness of breath, dry eyes, fatigue, malaise, and medication side effects mirror her testimony as well. (*Compare* Tr. 334-37, *and* Tr. 349, *and* Tr. 382-86, *and* Tr. 388, *with* Tr. 884-87).

After considering Claimant subjective statements from her pain questionnaire, fatigue questionnaire, and adult function reports, ALJ McDaniel found that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 846). ALJ McDaniel went on to provide a thorough discussion of the objective medical evidence and other evidence of record. (Tr. 846-48). In this discussion, ALJ McDaniel pointed to, factors such as Claimant's objective medical evidence, treatment history, and efforts to relieve pain and other symptoms, depicting routine medical care, a lack of recurring visits for complaints of pain, referrals for physical therapy or pain management, long-term use of a brace for any extremities and lack of prescription for any assistance device for ambulation. (*Id.*). ALJ McDaniel pointed to Claimant's routine eye exams and success of medication to treat her complaints, noting that even though progress notes show Claimant developed intolerance to the medication, her exam results remained unchanged. (*Id.*). ALJ McDaniel found that the medical evidence did not substantiate Claimant's statements about the debilitating effect of any medication side effects.

(*Id.*). Moreover, ALJ McDaniel concluded that Claimant's allegations about restrictions in her daily living were not supported by the record, as no treating source advised her "to stay home all day, lie down throughout the day, elevate her lower extremities, or restrict her movement or activities in any manner[,]" nor was she advised to refrain from work. (*Id.*). *See, e.g.*, *Belville v. Astrue*, No. 3:10-CV-627, 2011 WL 3922276, at *5 (N.D. Ohio Jan. 19, 2011) (finding ALJ justified in discounting claimant's statements about his daily activities upon finding that, based on the conflicting evidence of record, that claimant's limited daily activity "could have been due to his own choice" rather than any medical condition").

A full view of ALJ McDaniel's assessment of Claimant's subjective statements reveals that it was not a generic discussion. ALJ McDaniel's discussion of Claimant's subjective statements in the RFC assessment provides a detailed analysis that demonstrates ALJ McDaniel's consideration of the factors enumerated under Social Security Ruling 16-3p and creates an accurate and logical bridge for the Court to trace ALJ McDaniel's reasons for discounting Claimant's subjective statements.

To the extent ALJ McDaniel failed to discuss a specific aspect of Claimant's testimony that was not encompassed in the other evidence of Claimant's subjective statements, Claimant does not direct the Court to such failure. Nor was such detail required. *See Springer v. Comm'r of Soc. Sec.*, 451 F. Supp. 3d 744, 762 (E.D. Mich. 2020) ("The ALJ was 'required to ... provide specific reasons for crediting or discrediting a claimant's testimony,' but the ALJ was 'not required to analyze the relevance of each piece of evidence individually.'" (quoting *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011))). Beyond that, Claimant fails to demonstrate that further consideration of Claimant's subjective statements during her hearing would have resulted

in greater work-related limitations. ALJ McDaniel's assessment, and the evidence cited therein, complies with the applicable rules and regulations and provides substantial evidence in support of ALJ McDaniel's decision. The Court sees no basis to disturb ALJ McDaniel's findings and concludes that Claimant's first claim of error without merit.

For Claimant's second claim of error, she submits that ALJ McDaniel failed to incorporate limitations accounting for her fatigue and malaise in the RFC or explain why such limitations were omitted despite expressly acknowledging the severity of Claimant's statement about her fatigue and malaise in the RFC assessment. (DN 16, at PageID # 1876-79). ALJ McDaniel's failure to do so, Claimant explains, renders the RFC incomplete, the hypothetical posed the VE inaccurate, and warrants remand. (*Id.*).

The Commissioner responds that ALJ McDaniel adequately explained and accounted for Claimant's statements about her fatigue and malaise by imposing postural, handling, and fingering restrictions greater than those opined by the state agency physicians in the RFC. (DN 17, at PageID # 1886-88). Claimant's suggestion that ALJ McDaniel should have included other limitations to account for her fatigue and malaise, the Commissioner argues, "is essentially an impermissible invitation to the Court to reweigh certain evidence" and does not undermine the RFC or present an error warranting remand. (*Id.*).

As discussed in connection with ALJ McDaniel's evaluation of Claimant's subjective statements, ALJ McDaniel found Claimant's statements about the intensity, persistence, and limiting effects of her symptoms inconsistent with the objective medical evidence and other evidence of record. (Tr. 846). In doing so, ALJ McDaniel concluded that Claimant's statements about the "restrictions in her activities of daily living" were unsupported by the evidence of record

12

and appeared self-imposed, and that Claimant's statements about her "total inability to work are overstated[.]" (Tr. 848). Then, in ALJ McDaniel's review of the medical opinions of record, ALJ McDaniel explained that while she found the prior administrative findings of state agency medical consultants "P. Saranga, MD and Jack Reed, MD" persuasive, "[C]laimant's reports of worsening of symptoms, including reports of fatigue and malaise substantiate more restrictive limitations, including frequently handle and finger, no climbing of ladders, ropes, or scaffolds, and occasionally climb ramps and stairs, as well as occasionally stoop, kneel, crouch, and crawl." (Tr. 848).

ALJ McDaniel did not fully accept Claimant's allegations about the severity of her fatigue and malaise as Claimant appears to suggest. ALJ McDaniel discounted Claimant's subjective statements about the debilitating effect of her symptoms while thoughtfully accounting for those statements to the extent ALJ McDaniel found them credible. And while doing so, ALJ McDaniel included limitations in the RFC to account for Claimant's allegations of fatigue and malaise.

Claimant submits that these limitations are deficient because they are not related to Claimant's fatigue and suggests that mental limitations and limitations for absenteeism are warranted. Yet the Court has accepted similar climbing and postural limitations to account for a claimant's subjective statements of fatigue. *See, e.g.*, *David E. v. Kijakazi*, No. 3:22-CV-00540-CRS, 2023 WL 6452390, at *5 (W.D. Ky. Sep. 1, 2023), *report and recommendation adopted by* 2023 WL 6406451 (Oct. 2, 2023). This Court is disinclined to find that the incorporation of acceptable limitations in the RFC that reasonably account for, among other things, Claimant's fatigue and malaise, somehow renders ALJ McDaniel's decision in error. While Claimant cites evidence that she believes supports greater limitations, this evidence lends further support to ALJ

13

McDaniel's RFC and the limitations therein. For example, Claimant cites evidence that she believes to demonstrate a worsening of Claimant's symptoms since 2019. Meanwhile, ALJ McDaniel expressly acknowledged that Claimant's symptoms had worsened and for that reason imposed greater restrictions than those opined by the state agency medical consultants, expressly accounting for Claimant's worsening symptoms in the RFC. While Claimant may disagree with ALJ McDaniel's decision, she does not demonstrate that the decision is unsupported by substantial evidence and impermissibly asks this Court to re-weigh the evidence. Accordingly, Claimant's second claim of error is without merit.

ORDER

**IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED** in accordance with the findings above. This is a final and appealable Order and there is no just cause for delay.

Copies:        Counsel

14